UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SIDNEY D. JENKINS, III,<br><br>                Plaintiff,<br><br>v.<br><br>ELDON VAIL, GREG GARRINGER, JEFF UTTECHT, STEVE SINCLAIR, STEVE BARKER, JUAN PALOMO, SANDI JACOBSEN, D. FEDDERSON, ROBERT PIN, K. JURGENSON, E. CREWSE, JERMAINE BROWN, and JEFF SCHUETZE,<br><br>                Defendants. | No. CV-08-5075-CI<br><br>REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

BEFORE THE COURT is Plaintiff's renewed Motion for Temporary Restraining Order and Preliminary Injunction. (Ct. Rec. 58.) Plaintiff, a prisoner at the Washington State Penitentiary (WSP), appears pro se; Washington State Assistant Attorney General Daniel Judge represents Defendants. The parties have not consented to proceed before a magistrate judge.

**BACKGROUND**

Plaintiff filed an Amended Complaint on December 30, 2008, alleging Defendants have violated his federal rights under the First Amendment of the United States Constitution and the Religious Land

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 1

Use and Institutionalized Persons Act (RLUIPA). (Ct. Rec. 19.) On February 2, 2009, the court permitted Plaintiff to proceed and directed service on Defendants and the Office of the Attorney General for the State of Washington. (Ct Rec. 24.) Defendants filed their Answer on April 2, 2009. (Ct. Rec. 44.)

Plaintiff now seeks injunctive relief to prevent future disciplinary action and the withholding of privileges by WSP officials based on his refusal to participate in work or educational programming. He asserts his sincerely held religious beliefs prevent him from supporting a non-Islamic government. Plaintiff asserts WSP officials have repeatedly offered him jobs, which he refused based on his religious convictions. He was infracted, found guilty and punished with disciplinary sanctions for each refusal and each infraction. (Ct. Rec. 22 at 2-3.) Plaintiff states the imposed sanctions included loss of earned time and good time; loss of day room and yard time; and loss of recreation, prison store and library privileges. (Ct. Rec. 22 at 2; Ct. Rec. 66 at 6.) He asserts prison policy mandates that inmates who refuse to work for non-medical reasons be assigned to their cell from 8:00 a.m. until 4:30 p.m. daily, and there is no authority for repeated infractions and sanctions. (Ct. Rec. 22 at 7, 11; Ct. Rec. 57 at 2.)

Plaintiff further alleges that although he has not been offered a job since January 9, 2009 (which resulted in infraction and sanction) (Ct. Rec. 66 at 6), and Defendants appear to have granted him the "narrowly drawn relief he seeks" (Ct Rec. 22 at 6), Defendants are "now denying Jenkins the privilege to transfer to medium custody" due to his refusal to work due to religious reasons.

1  (Ct. Rec. 66 at 6.) He seeks a preliminary injunction to prevent
2  further substantial burden on his religious exercise.
3     Defendants respond that Plaintiff has not met the criteria for
4  prospective relief under the PLRA or the criteria for a restraining
5  order under FED R. CIV. P. 65.  (Ct. Rec. 64 at 6, 8.)  They argue
6  Plaintiff's request is not narrowly drawn and violates the mandatory
7  requirements of State law.  (Ct. Rec. 64 at 8.)  They also argue
8  Plaintiff has not shown irreparable injury because (1) he is not
9  working, and has not worked for over a year, so he has not violated
10 his religious beliefs; and (2) he can participate in educational
11 programming, rather than work at a prison job. (*Id*. at 9.)
12 Defendants appear to assert Plaintiff has not experienced
13 irreparable harm by receipt of multiple infractions or assignment to
14 cell during the day because he has requested cell assignment. (*Id*.)
15 They also state that, as of May 22, 2009, Plaintiff is no longer
16 assigned to his cell, can move around freely and is "not restricted
17 during the day." (Ct. Rec. 64 at 14, Ex. 1, Declaration of Lori
18 Scamahorn.)

### INJUNCTIVE RELIEF

20    The court has broad discretion to grant or deny a preliminary
21 injunction. *Half Moon Bay Fisherman's Marketing Assn. v. Carlucci,*
22 857 F.2d 505, 507 (9th Cir. 1988); *Wyckoff Co. v. Environmental*
23 *Protection Agency,* 796 F.2d 1197, 1198 (9th Cir. 1986); *Dollar Rent*
24 *a Car of Washington v. Traveler's Indemnity Co.*, 774 F.2d 1371, 1374
25 (9th Cir. 1985).   The primary purpose of a preliminary injunction
26 is to prevent irreparable harm which may occur before a decision on
27 the merits can be rendered by the trial court.
28

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 3

A party seeking a preliminary injunction must fulfill one of two standards: the "traditional" standard or the "alternative" standard. *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional standard, a court may issue preliminary injunctive relief if it finds (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Id.*

Under the alternative standard, the moving party must show either (1) a combination of probable success **and** the possibility of irreparable injury, or (2) the existence of serious questions **and** the balance of hardship tips sharply in its favor. *Warsoldier v. Woodford*, 418 F.3d 989, 993-94 (9th Cir. 2005). However, these two articulations under the alternative standard are not two distinct tests, but are "merely extremes of a single continuum." *Wyckoff Co.*, 796 F.2d at 1198. In other words, at the "irreducible minimum," the moving party must demonstrate "a fair chance of success on the merits" or "questions . . . serious enough to require litigation." *Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 411 U.S. 937 (1979). "[T]he greater the hardship to [Plaintiff], the less probability of success must be shown." *Warsoldier*, 418 F.3d at 994 (*quoting Walczack v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (internal citations omitted).

Under both tests, irreparable harm is the "single most important prerequisite for the issuance of a preliminary

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 4

injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Further, the Ninth Circuit has held that, "'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'" *Warsoldier*, 418 F.3d at 1001 (citations omitted). "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,' for purposes of preliminary injunction." *Id*. at 1002 (*quoting Elrod v. Burns,* 427 U.S. 347, 373 (1976)).

Under the Federal Rules of Civil Procedure (FED. R. CIV. P.), a temporary restraining order may issue only upon a showing of "immediate and irreparable injury, loss or damage." FED. R. CIV. P. 65. Regardless of the test employed, Plaintiff clearly carries the burden of persuasion. It is well-settled that injunctive relief is an extraordinary remedy, "'to be used sparingly, and only in a clear and plain case.'" *Rizzo v. Goode* 423 U.S. 362, 378 (1979) (*quoting Irwin v. Dixon*, 9 How. 10, 33 (1850)).

**PLRA**

In this case, the requested relief is also subject to the requirements of the PLRA, specifically 18 U.S.C. § 3626(a)(2), which identifies preliminary injunctive relief, as distinct from "prospective relief," as an appropriate remedy with respect to prison conditions:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive

relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in (1)(B)[1] in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry . . . .

18 U.S.C. § 3626(a)(2).[2]   The Ninth Circuit has held that although

---

[1] The referenced provision "(1)(B)" states:

The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless – (I) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right.

18 U.S.C. § 3626(1)(B).

[2] The PLRA also mandates that a prisoner cannot bring an action with respect to prison conditions under federal law until all available administrative remedies are exhausted. 42 U.S.C. § 1997e (a). In pleadings filed February 17, 2009, Defendants argued Plaintiff's claims should be dismissed because Plaintiff had not exhausted his administrative remedies. (Ct. Rec. 28 at 7.) Defendants now concede Plaintiff has exhausted administrative remedies related to his First Amendment religious exercise and RLUIPA claims. (*See* Ct. Rec. 56 at 3.) The court notes that Plaintiff filed supplemental evidence on June 8, 2009, establishing that he had exhausted his administrative remedies in this matter on February 28, 2009. (Ct. Rec. 72, Ex. 1, Correspondence Reply.)

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 6

the PLRA affects the type of prospective injunctive relief available, "it has not substantially changed the threshold findings and standard required to justify an injunction." *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001) (granting prospective and retrospective relief as least restrictive means to correct constitutional violations). In fashioning narrowly tailored injunctive relief that meets PLRA standards, the court must be mindful of its impact on the prison operations and security. Unless the court orders otherwise after making specific findings required by the statute, "preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry." 18 U.S.C. § 3626(a)(2).

---

Thus, exhaustion was completed well before April 21, 2009, when the undersigned recommended denial of Plaintiff's first Motion for injunctive relief for failure to exhaust administrative remedies. (Ct. Rec. 55.) The hearing on this matter took place on April 15, 2009, without oral argument. Plaintiff did not receive notice of exhaustion until April 30, 2009. (Ct. Rec. 72, Ex. 1.) The record also includes a Declaration from Lori Scamahorn, Grievance Coordinator at the Washington State Penitentiary, dated March 3, 2009, that states, "Mr. Jenkins has initiated a grievance" related to his refusal to work because of his religious faith, but the court was not informed that the grievance was exhausted on February 28, 2009. (Ct. Rec. 32 at 12.) The failure to bring this to the court's attention in a timely manner has caused delay in these proceedings.

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 7

**DISCUSSION**

**A.   Irreparable Harm in the First Amendment Context**

Under First Amendment Free Exercise clause analysis, where a prison policy "puts substantial pressure on an adherent to modify his behavior and violate his beliefs," that policy infringes on the free exercise of religion. *Thomas v. Review Bd. of the Indiana Employment Sec. Division*, 450 U.S. 707, 718 (1981); *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997). To survive constitutional scrutiny under the First Amendment Free Exercise standard, prison officials must show their policies are rationally related to a legitimate penological purpose." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Mayweathers v. Newland*, 258 F.3d 930, 937-38 (9th Cir. 2001).

In 2000, to prevent undue barriers to religious observances by persons institutionalized in state or federal institutions, Congress passed RLUIPA with the clear intent of providing heightened protection of prison inmates' religious beliefs. At the same time, Congress was mindful of "the urgency of discipline, order, safety, and security in penal institutions." *Cutter v. Wilkinson*, 544 U.S. 709, 717, 723 (2005). Under RLUIPA, no government "shall impose a substantial burden on the religious exercise of a person residing or confined to [a jail, prison or other correctional facility] . . . even if the burden results from a rule of general applicability," unless the burden furthers a "compelling governmental interest." 42 U.S.C. §§ 1997, 2000cc-1(a)-(2). To meet the RLUIPA standard, a substantial burden on religious exercise must serve that compelling interest by "the least restrictive means." *Id.* "Religious exercise" is broadly defined under RLUIPA as "any exercise of

religion, whether compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Because RLUIPA imposes a more heightened scrutiny of restrictions on inmates' religious exercise, and contemplates a broader definition of "religious exercise," if a prison policy survives RLUIPA scrutiny, it survives First Amendment scrutiny.

Here, Plaintiff states he has practiced the Muslim faith since 1984, and became a member of the Shiite sect in 2002. (Ct. Rec. 66, Ex. 3 at 1. Affidavit of Sidney D. Jenkins, III.) He has presented uncontroverted evidence that Washington State Prison (WSP) officials infracted and punished him at least five times during the past year for failing to program either by working or participating in educational programs, despite his consistent rejection of programming offers based on his expressed belief that to work for or support a non-Islamic authority would violate his religious tenets. (Ct. Rec. 19; Ct. Rec. 22 at 13, Exs. 1-7; Ct. Rec. 66.) He also has averred that he has been in the Washington State penal system for ten years and has neither worked nor been punished in other State facilities because of his refusal to work for religious reasons. (Ct. Rec. 66 at 10; Ct. Rec. 22 at 13.) He claims that "no other W.S.P. inmate who has refused to program, is repeatedly harassed to program. They are left alone until they themselves decide to do differently." (Ct. Rec. 66 at 11-12.) He argues that WSP officials' pattern of infracting and punishing him is an unconstitutional attempt to coerce him into violating his religious beliefs. Although the job offers, infractions and sanctions for refusing to work apparently have stopped, and Plaintiff is no longer

1  confined to cell assignment (Ct. Rec. 66 at 6; Ct. Rec. 64 at 14),
2  Plaintiff claims new coercion is being applied by the prison
3  officials who now refuse to transfer him to medium custody facility,
4  a transfer for which he is allegedly otherwise eligible.  He
5  supports this assertion with prison documentation. (Ct. Rec. 66 at
6  11; *id*. at Ex. 2, State of Washington DOC Custody Review, p. 3 of
7  4.)
8      Defendants respond that the Ninth Circuit "has found no
9  constitutional violation in statutes that require prisoners to work
10 or to program."  (Ct. Rec. 4 at 7.)  It is noted, however, that
11 cases cited in support of this argument are not First Amendment
12 cases.  Rather, they involve the application of the Fair Labor
13 Standards Act to prisoner "employees."  *Morgan v. MacDonald*, 41 F.3d
14 1291 (9th Cir. 1994); *Burleson v. State of Cal.*, 83 F.3d 311 (9th Cir.
15 1996); *Hale v. State of Ariz.*, 993 F.2d 1387 (9th Cir. 1993).  In
16 these cases inmates were not objecting to prison work for religious
17 reasons. Further, Plaintiff does not challenge the constitutionality
18 of the prison work program; he challenges the constitutionality of
19 programming policies that burden his religious practices without a
20 compelling governmental interest or least restrictive alternative.
21     Defendants also contend Plaintiff has not supported his motion
22 "with the declaration of a Muslim Imam or other religious cleric"
23 that his religious beliefs are being substantially burdened.  (Ct.
24 Rec. 64 at 3.)  However, Plaintiff has submitted Islamic texts which
25 he interprets as a direct prohibition against supporting a non-Islam
26 authority.  (Ct. Rec. 22, Ex. 1; Ct. Rec. 66, Ex. 1.)  As found by
27 the Supreme Court, "it is not within the judicial ken to question
28

the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds.*" *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (emphasis added). Further, under the RLUIPA standard, Plaintiff need not show that his belief is one "central" to the Muslim faith. 42 U.S.C. § 2000cc-(5)(7)(A).

Consistent with the Supreme Court's disapproval of the "centrality" test, the Ninth Circuit has ruled that a belief "sincerely held" and "rooted in religious belief" is entitled to constitutional protection without regard to whether the belief is a central tenet to a recognized faith. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (2008); *see also Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (in RLUIPA action, clergy verification insufficient to override inmate's "sincerely held" religious beliefs). Thus, Plaintiff has presented a colorable free exercise claim under the First Amendment. *Thomas,* 450 U.S. at 717-718 (conditioning receipt of State benefits on conduct prohibited by applicant's religious beliefs is a substantial infringement on free exercise); *Warsoldier*, 418 F.3d at 1001; *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973-74 (9th Cir. 2002); *see also May*, 109 F.3d at 563. Having presented this colorable First Amendment claim, Plaintiff establishes the requisite irreparable harm. *Warsoldier*, 418 F.3d at 1001; *Sammartano*, 303 F.3d at 773-74.

**B.   Likelihood of Success on the Merits**

Although the likelihood of success on the merits of Plaintiff's religious exercise claims cannot be determined conclusively on the record before the court, the Ninth Circuit has held that the

demonstration of a colorable First Amendment claim is sufficient to establish irreparable injury that merits the grant of preliminary injunctive relief. *Warsoldier*, 418 F.3d at 1001-02; *Mayweathers*, 258 F.3d at 938. Further, as discussed above, a showing of probable success is less compelling where there is a strong showing of irreparable harm.

**C.   Serious Question/Balance of Hardship Alternative Standard**

Plaintiff, in his extensive briefing, has raised serious questions going to the merits the case, not the least of which is whether DOC and WSP programming policies that burden Plaintiff's religious exercise serve a compelling government interest, and if so, whether the government provides the least restrictive means to serve that interest. Finally, the balance of hardships tips in favor of Plaintiff. Although Plaintiff was not being disciplined for failure to program at the time his reply was filed, there is no indication in the record that the infractions and loss of privileges could not resume. Indeed, the record indicates Plaintiff is being denied transfer reclassification unless he programs, or prevails in this litigation. (Ct. Rec. 66, Ex. 2, Custody Review, at p. 3 of 4.)  Further, there is no evidence to establish a detriment to prison operations as a result Plaintiff's refusal to program. Although Plaintiff has offered the alternative of cell assignment as a least restrictive means of meeting the prisons need for security and order, Defendant Lori Scamahorn states Plaintiff is no longer assigned to his cell during the time allotted for programming. (Ct. Rec. 64 at 14.)  Thus, Plaintiff's refusal to program for religious reasons does not seem to be causing a hardship to prison order or

security.[3]

Defendants' argument that Plaintiff has not articulated a hardship because he is not working and, therefore, not violating his religious beliefs, is not persuasive. As discussed above, the pressure to choose between forsaking sincerely held religious practices or receipt of prison privileges and transfer eligibility is sufficient hardship to warrant narrowly tailored injunctive relief. Thus, Plaintiff has met the alternative standard for preliminary injunction.

**D.   Remedy**

The PLRA mandates preliminary injunctive relief be narrowly tailored and extend no further than necessary to correct the harm found. The court is mindful that the State and DOC have a compelling governmental interest in maintaining security and order in its facilities. Accordingly,

**IT IS RECOMMENDED** Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction **(Ct. Rec. 58)** be **GRANTED** as follows:

1. The court issue a preliminary injunction enjoining Defendants as follows:

>   a. Defendants may offer Plaintiff work assignments or educational programming, but shall not infract Plaintiff for

---

[3] Defendant's arguments that Washington State Law would be violated if Plaintiff is not disciplined for failure to work is also contradicted by Ms. Scamahorn's declaration that as of May 22, 2009, Plaintiff was neither programming nor confined to cell assignment.

REPORT AND RECOMMENDATION FOR ORDER GRANTING
PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 13

refusal to participate in programming if the refusal is for religious purposes;

   b.   Defendants shall not impose punishment on Plaintiff, or deny him privileges or transfer rights based solely on Plaintiff's refusal to program for religious reasons;

2.   The court find Defendants may confine Plaintiff to cell assignment during program hours if Plaintiff does not participate in programming for religious reasons.

3.   The court find that the foregoing recommended relief (a) extends no further than necessary to correct the threat to Plaintiff's federal rights under RLUIPA; and (b) is narrowly drawn and the least intrusive means necessary to correct the harm;

4.   The preliminary injunction expire 90 days from entry of the court's preliminary injunction and be subject to renewal upon a showing of continued harm.

**IT IS ALSO RECOMMENDED** that Plaintiff's first Motion for Temporary Restraining Order and Preliminary Injunction **(Ct. Rec. 22)** be denied as moot.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional

time after certain kinds of service.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judges's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Plaintiff, Defendants and the assigned district judge.

DATED July 22, 2009.

                 S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE