UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SIDNEY D. JENKINS, III,<br><br>    Plaintiff,<br><br>  vs.<br><br>ELDON VAIL, *et al.*,<br><br>    Defendants. | NO.  CV-08–5075-CI<br><br>**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Magistrate Judge Imbrogno filed a Report and Recommendation on July 22, 2009, which recommends the court grant Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction. (Ct. Rec. 82).  The Defendants have timely filed an objection to the same. (Ct. Rec. 91).  The Plaintiff has responded to the objection. (Ct. Rec. 93).

Plaintiff seeks injunctive relief to prevent future disciplinary action and the withholding of privileges by Washington State Penitentiary (WSP) officials based on his refusal to participate in work or educational programming.  Plaintiff asserts his sincerely held religious beliefs prevent him from supporting a non-Islamic government.  Magistrate Judge Imbrogno found this was a sincerely held religious brief and, as such, sufficient to establish the requisite likely irreparable harm to Plaintiff's rights under the First Amendment (free exercise of religion) and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.

**ORDER DENYING RENEWED MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 1**

§§ 2000cc to 2000cc-5. Furthermore, Magistrate Judge Imbrogno found there was a serious question whether Department of Corrections (DOC) and WSP programming policies that burden Plaintiff's exercise of his religion serve a compelling government interest and if so, whether the least restrictive means are used to serve that interest. Finally, the Magistrate Judge found the balance of hardships tips in favor of the Plaintiff because there is no indication the infractions and loss of privileges could not resume, and because there is evidence the Plaintiff is being denied transfer reclassification unless he programs or prevails in the captioned matter. The Magistrate Judge found there was no evidence to establish a detriment to prison operations as a result of Plaintiff's refusal to program.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. §2000cc(a)(1).

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A). It provides greater protection to inmates' free exercise rights than the First Amendment. Under traditional First Amendment jurisprudence, prisoners' free exercise claims are analyzed under the deferential rational basis standard of *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254 (1987), whereas "RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is in furtherance of a compelling governmental interest." *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008).

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 2**

Congress did not intend that RLUIPA would undermine prison operations. Rather, "should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter v. Wilkinson*, 544 U.S. 709, 726, 125 S.Ct. 2113 (2005). Congress intended for courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id*. at 723. The Supreme Court did "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id*. at 722. Rather, "an accommodation must be measured so that it does not override other significant interests." *Id*.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, ____ U.S. ____, 129 S.Ct. 365, 374 (2008). In *Winter*, the Supreme Court rejected the Ninth Circuit's standard that where a plaintiff demonstrates there is a strong likelihood of prevailing on the merits, a preliminary injunction may be entered based only on a "possibility" of irreparable harm. *Id*. at 375.

Here, it appears Magistrate Judge Imbrogno found more than just a mere "possibility" of irreparable harm. She found a likelihood of irreparable harm, if not the existence of irreparable harm already, by virtue of the Plaintiff having presented a colorable First Amendment claim. Assuming that Plaintiff has a sincerely held belief that performing work or engaging in educational programming for an "infidel" government violates his Islamic faith, and therefore that the Plaintiff is subject to

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 3**

irreparable harm, this court nonetheless respectfully declines to follow the report and recommendation and grant preliminary injunctive relief to the Plaintiff. Plaintiff's likelihood of success on the merits is minimal, the balance of the equities (the hardships) does not tip in his favor, and granting injunctive relief is not in the public interest.

Inmates in state correctional institutions are expected to work and/or further their educations. The Washington State Legislature intends the corrections system to accomplish a number of different objectives, including reflecting the values of the community such as avoiding idleness; adoption of the work ethic ("[i]t is the community expectation that all individuals should work and through their efforts benefit both themselves and the community"); providing opportunities for self-improvement; linking the receipt or denial of privileges to responsible behavior and accomplishments ("[t]he individual who works to improve himself or herself and the community should be rewarded for these efforts [and] [a]s a corollary, there should be no rewards for no effort"); and sharing in the obligations of the community ("[a]ll citizens, the public and inmates alike, have a personal and fiscal obligation in the corrections system"). RCW 72.09.010(5)(a)-(e). Another objective is that the system should provide for prudent management of resources, recognizing that "[s]ince most offenders return to the community, it is wise for the state and the communities to make an investment in effective rehabilitation programs for offenders and the wise use of resources." RCW 72.09.010(6).

RCW 72.09.070 creates a "correctional industries board of directors." Among the duties of this board is to establish and implement policies for programs designed to: (a) "[o]ffer inmates meaningful employment, work experience, and training in vocations that are specifically designed to reduce recidivism and thereby enhance public safety by providing opportunities for legitimate means of livelihood upon their

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 4**

release from custody;" and (b) [provide industries which will reduce the tax burden of corrections and save taxpayers money through production of goods and services for sale and use."

According to RCW 72.090.460:

> The legislature intends that all inmates be required to participate in department-approved education programs, work programs, or both, unless exempted as specifically provided in this section. Eligible inmates who refuse to participate in available education or work programs available at no charge to the inmates shall lose privileges according to the system established under RCW 72.09.130.

RCW 72.09.130(1) requires DOC to "adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges."

The foregoing legislative provisions make it clear that work and/or educational programming are part and parcel of an inmate's sentence of incarceration. A compelling governmental interest is to maintain order, safety and discipline within the penal institution. Requiring inmates to work and/or engage in education programming maintains order, safety and discipline. Here, the Plaintiff does not seek merely an "accommodation" of his religious beliefs. Instead, he seeks an outright exemption from an obligation reasonably imposed on every inmate, regardless of creed, who is imprisoned in the corrections system. Plaintiff does not seek an accommodation allowing him to avoid work or educational programming on certain dates and times so as to accommodate his religious beliefs. See *Snyder v. Trudell*, 2009 WL 37183 (E.D. Mich. 2009) (Seventh Day Adventist inmate refusing to work from sundown Friday to sundown on Saturday); *Mayweathers v. Terhune*, 328 F.Supp.2d 1086, 1097 (E.D. Cal. 2004)(policy of disciplining Muslim prisoners for missing work assignments in order to attend hour-long Friday Sabbath services was not least restrictive means of furthering compelling governmental interest in keeping

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 5**

prisoners occupied and using their labor for prison upkeep).  Plaintiff seeks an exemption allowing him to not engage in any work or educational programming at all.

One of the keys to maintaining order and safety within a penal institution is to avoid doing anything which appears to favor a particular group of inmates to the exclusion of the other inmates, thereby breeding resentment among the excluded inmates.  This is very likely what would occur if all Muslim inmates were permitted to opt out of work and educational programming on the basis that engaging in that activity for the benefit of an "infidel" government is contrary to their religious beliefs.[1]  Allowing Muslim inmates to opt out of work or educational programming on this basis would "impose unjustified burdens on other institutionalized persons."

Here, there is no least restrictive means of furthering the government's compelling governmental interest in maintaining order, safety and discipline within a penal institution.  This is because, as noted, the Plaintiff is seeking more than just an accommodation- a compromise- which allows him to adhere to his religious beliefs, while at the same time preserving and promoting the government's compelling interest.  The only option presented by Plaintiff is that he, and like-minded Muslim inmates, be wholly excused from engaging in any work or

///
///
///
///

---

[1] The court is not suggesting that all Muslim inmates necessarily subscribe to Plaintiff's belief that engaging in work or educational programming is contrary to Muslim beliefs.

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 6**

educational programming.[2] The least restrictive means of furthering the government's compelling interest is to require the Plaintiff to engage in work or educational programming and if he does not do so, sanction him appropriately and as authorized.[3]

It is in the public interest that all inmates work and/or engage in educational programming. Engaging in work and/or educational programming increases the likelihood that inmates will not re-offend and that they will become productive citizens when they are released from incarceration. The financial burden on taxpayers is reduced if inmates produce goods and services while incarcerated , and also if they are not re-incarcerated at a later date.[4] Accordingly, entering an injunction in favor of the Plaintiff is not in the public interest. Because of the public interest, the court cannot find that the balance of the equities tips in favor of the Plaintiff.

Assuming there is a "substantial burden" upon Plaintiff's "religious exercise," there is reason to believe the Defendants can demonstrate this burden is in furtherance

---

[2] If Muslim inmates are allowed to opt out of work and educational programming on the basis that they cannot "program" for an "infidel" government, it is reasonably foreseeable that inmates of other creeds would seek to opt out on the same basis.

[3] Failure to program is considered a serious infraction, Washington Administrative Code (WAC) 137-25-030 (557), and is subject to the sanctions specified in WAC 137-28-350(p)

[4] Plaintiff indicates he is serving a sentence of life imprisonment without parole. As discussed herein, there is still a compelling governmental interest in having prisoners work and/or educationally program which is related to maintaining order and security within the institution (i.e., avoiding idleness, keeping prisoners occupied, having prisoners contribute to prison upkeep) , separate and distinct from a prisoner's prospects outside of the institution if and when he is released.

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 7**

of a compelling governmental interest and that it is the least restrictive means of furthering that interest. Accordingly, the court finds it is not likely that Plaintiff will succeed on the merits of his claims ( First Amendment and RLUIPA), that it is not in the public interest to enter a preliminary injunction, and that the balance of hardships does not tip in favor of the Plaintiff.[5]

The court **DECLINES** to adopt the Magistrate Judge's Report and Recommendation (Ct. Rec. 82). Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Ct. Rec. 58) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to Plaintiff, to counsel for Defendants, and to Magistrate Judge Imbrogno.

**DATED** this ___31st___ day of August, 2009.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Judge

---

[5] Granting or denying a preliminary injunction is not a decision on the merits. The Plaintiff has filed a motion for summary judgment (Ct. Rec. 85) which goes to the merits of his claims and which will be heard by the Magistrate Judge at a later date. Plaintiff is advised that an order denying a preliminary injunction is appealable to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. §1292(a)(1).

**ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 8**