1

2

3                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
4

5   SIDNEY D. JENKINS, III,        )  No. CV-08-5075-CI
                                   )
6               Plaintiff,         )  REPORT AND RECOMMENDATION FOR
                                   )  ORDER GRANTING DEFENDANTS'
7   v.                             )  MOTION FOR SUMMARY JUDGMENT AND
                                   )  DENYING PLAINTIFF'S MOTION FOR
8   ELDON VAIL, et al.,            )  SUMMARY JUDGMENT
                                   )
9               Defendants.        )

10

11       BEFORE THE COURT are the parties' cross-Motions for Summary

12  Judgment. (Ct. Rec. 85, 111.) Plaintiff, a prisoner housed at the

13  Washington State Penitentiary (WSP), appears *pro se*; Washington

14  State Assistant Attorney General, Corrections Division, Daniel J.

15  Judge represents Defendants.   The parties have not consented to

16  proceed before a magistrate judge.

17                        **PROCEDURAL HISTORY**

18       The lengthy procedural history is set out in detail in the

19  court file.   Briefly summarized, Plaintiff filed an Amended

20  Complaint on December 30, 2008, alleging Defendants have violated

21  his federal rights under the First Amendment of the United States

22  Constitution and the Religious Land Use and Institutionalized

23  Persons Act (RLUIPA).   (Ct. Rec. 19.)  On February 2, 2009, the

24  court permitted Plaintiff to proceed and directed service on

25  Defendants and the Office of the Attorney General for the State of

26  Washington.  (Ct Rec. 24.)  Defendants filed their Answer on April

27  2, 2009.   (Ct. Rec. 44.)  On June 29, 2009, the court granted

28  Plaintiff's motion for permissive joinder (Ct. Rec. 68), and

1 directed service on additional Defendant, Gina Penrose. (Tr. 74.)

2 On August 3, 2009, Plaintiff filed a Motion for Summary Judgment,

3 supported by a Memorandum and supplemental Exhibits. (Ct. Rec. 85.)

4 Defendants responded in opposition of Plaintiff's Motion for Summary

5 Judgment and filed a Counter-Statement of Material Facts. (Ct. Rec.

6 97, 98.)   Defendants also filed Declarations in support of their

7 opposition and Counter-Statement of Material Facts.  (Ct. Rec. 99-

8 104.)   On August 28, 2009, Defendants filed a cross-Motion for

9 Summary Judgment supported by a Memorandum and Statement of Material

10 Facts.  (Ct. Rec. 111, 112, 113.)  On September 1, 2009. Plaintiff

11 filed a Response to Defendants' cross-Motion for Summary Judgment.

12 (Ct. Rec. 119.)

13      On October 21, 2009, this court stayed proceedings pending

14 Plaintiff's interlocutory appeal of the district court's denial of

15 his renewed motion for temporary restraining order and preliminary

16 injunction.  (Ct. Rec. 117, 134.)  On February 9, 2010, the Ninth

17 Circuit Court of Appeals summarily affirmed the district court's

18 denial, finding the questions raised on appeal were "so

19 insubstantial as not to require further argument." (Ct. Rec. 140.)

20      On May 27, 2010, the court reset the hearing on summary

21 judgment, and set deadlines for limited supplemental briefing.[1]

22 (Ct. Rec. 153.)  The court limited Plaintiff's claims in this matter

23 to alleged First Amendment and RLUIPA violations arising from State

24 _____

25      [1] The court also denied Plaintiff's Motion for Supplemental

26 Pleadings and leave to file a Second Amended Complaint, for failure

27 to comply with the exhaustion requirement under the Prison

28 Litigation Reform Act.  (Ct. Rec. 152, 153.)

1  and Department of Corrections requirements that inmates work or

2  program while incarcerated. (*Id.*; Ct. Rec. 19.) Both parties timely

3  submitted supplemental briefing. (Ct. Rec. 154, 157.)

**FIRST AMENDED COMPLAINT**

5  Plaintiff brings this civil rights action pursuant to 42 U.S.C.

6  § 1983, alleging Defendants violated his civil rights under the

7  First Amendment Free Exercise Clause and RLUIPA when they repeatedly

8  sanctioned him for refusing to work or participate in educational

9  programming based on religious reasons. The following Defendants

10 are named in the Amended Complaint: Eldon Vail, Secretary of the

11 Washington State Department of Corrections (DOC); Greg Garringer,

12 Manager for DOC Religious Programs; Jeff Uttecht, former WSP

13 Superintendent; Steve Sinclair, current WSP Superintendent; Steve

14 Barker, WSP Vocational Training Coordinator; Robert Piver, WSP Shift

15 Captain; Sandi Jacobsen, WSP Custodial Unit Supervisor (CUS); Juan

16 Palomo, WSP CUS; Don Fedderson, WSP Shift Lieutenant; Ken Jurgenson,

17 WSP Disciplinary Hearings Officer; Germaine Brown, WSP Employment

18 Coordinator; Ernie Crewse, WSP Disciplinary Hearings Officer; Jeff

19 Shuetze, WSP Corrections Officer; Gina Penrose, WSP Classification

20 Counselor; Brian McGuire; and Mark Kucza; and Terry Gregerson, WSP

21 Corrections Officer.[2] (Ct. Rec. 19 at 6-8; Ct. Rec. 74.)

22 _____

23 [2] Terry Gregerson is not a named Defendant in the caption of

24 the Amended Complaint, although he is listed among Defendants named

25 in Section III (Parties) of the Amended Complaint. (Ct. Rec. 19,

26 Section III.) It also is noted Mr. Gregerson is not included in

27 Defendants' Notice of Appearance or Answer to Amended Complaint, and

28 it does not appear Mr. Gregerson was served. (*See* Ct. Rec. 24, 45-

Plaintiff, a Shiite Muslim, claims working for and/or supporting a non-Islamic government violates his religious beliefs. He contends State of Washington laws and DOC regulations that require prisoners to work or participate in educational programming and progressive disciplinary action for refusing to work impose a substantial burden on his religious exercise and violate his First Amendment rights to free exercise of religion. (Ct. Rec. 86 at 4.) He claims DOC inmate work/program regulations coerce him into working for a non-Islamic government, which, under Islamic law, is prohibited. Plaintiff also claims Defendants have not shown a compelling state interest to justify the burden on his religious exercises, and have ignored their legal obligation to identify the least restrictive means to meet the state's interest. He seeks injunctive relief and monetary damages. (Ct. Rec. 86 at 25-27.)

Defendants argue state laws and prison regulations requiring inmates to work or participate in educational programming or face disciplinary action do not constitute a substantial burden on Plaintiff's religious exercise. They contend the State of Washington has a compelling interest in maintaining prison security, order, and safety, and the statutory requirements that prisoners work or go to school as part of their sentence serve that interest in the least restrictive means. (Ct. Rec. 112.) Defendants assert they are entitled to qualified immunity from monetary damages. (Ct. Rec. 44 at 7.) They also assert Eleventh Amendment immunity in claims brought against state officials in their official capacity, and lack of personal participation by numerous Defendants. (Ct.

52, 74.)

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

Rec. 112 at 17.)

**STANDARD OF REVIEW**

**A.    SUMMARY JUDGMENT**

FED R. CIV. P. 56(c) states a party is entitled to summary judgment in its favor, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The party opposing the motion must present facts in evidentiary form and cannot rest merely on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). The court will examine the direct and circumstantial proof offered by the non-moving party and the permissible inferences which may be drawn from such evidence. A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp. v. Square D Co.*, 68

1  F.3d 1216 (9th Cir. 1995).

2      Finally, the Supreme Court has ruled that FED. R. CIV. P. 56(c)

3  requires entry of summary judgment "against a party who fails to

4  make a showing sufficient to establish the existence of an element

5  essential to that party's case, and on which that party will bear

6  the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A

7  complete failure of proof concerning an essential element of the

8  nonmoving party's case necessarily renders all other facts

9  immaterial." *Id.* at 323.  The question on summary judgment, then,

10  is "whether the evidence is so one-sided that one party must prevail

11  as a matter of law." *Anderson,* 477 U.S. at 251-52.  Where there is

12  no evidence on which a jury could reasonably find for the non-moving

13  party, summary judgment is appropriate.  *Id.* at 252.

14  **B.   42 U.S.C. § 1983**

15      To state a claim under 42 U.S.C. § 1983, Plaintiff must allege

16  (1) violation of a right secured by the Constitution and laws of the

17  United States, and (2) the deprivation was committed by a person

18  acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527,

19  535 (1981)(*overruled in part on other grounds*, *Daniels v. Williams*,

20  474 U.S. 327, 330-31 (1986)); *Leer v. Murphy*, 844 F.2d 628, 632-33

21  (9th Cir. 1988).  A person subjects another to a deprivation of a

22  constitutional right when committing an affirmative act,

23  participating in another's affirmative act, or omitting to perform

24  an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740,

25  743 (9th Cir. 1978).  To hold a defendant liable for damages, the

26  wrongdoer must personally cause the violation. *Leer*, 844 F.2d at

27  633.  There is no *respondeat superior* liability. *Taylor v. List*,

28  880 F.2d 1040, 1045 (9th Cir. 1989).  Thus, a supervisor is liable

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 6

under § 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it." *Id*.

If monetary damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation. *Leer*, 844 F.2d at 634. Further, the Eleventh Amendment to the United States Constitution bars lawsuits by a citizen against its own state in federal courts. *Welch v. Texas Dept. of Highways and Pub. Transp*., 483 U.S. 468, 472-73 (1987). Neither a state agency nor a state official acting in his or her official capacity is a "person" under 42 U.S.C. § 1983; therefore, the Eleventh Amendment bars lawsuits against state agencies and state officials in their official capacity in federal court. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Holley v. California Dept. of Corrections*, 599 F.3d 1108, 1112-13 (9th Cir. 2010) (RLUIPA relief language does not effect a waiver of sovereign immunity from suit for monetary damages).

Although the Eleventh Amendment does not bar suit against defendants in their personal capacity, state officials being sued as individuals may avoid liability by asserting qualified immunity. Qualified immunity from suit applies when the defendant's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiff must show that a constitutional right was violated, and the specific right claimed was clearly established at the time of the alleged violations. *Pearson v. Callahan*, 129 S.Ct. 808 (2009); *Davis v. Scherer*, 468 U.S. 183, 197 (1984). Whether the law was clearly established at

1   the time of the alleged violation is a question of law, not of
2   facts. *Harlow*, 457 U.S. at 818 n.32 (judge on summary judgment may
3   determine if the law was clearly established at the time).

4        In RLUIPA cases, many circuits have concluded RLUIPA does not
5   subject state officials in their individual capacities to private
6   liability for monetary damages. *See, e.g., Rendelman v. Rouse*, 569
7   F.3d 182, 188-89 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316,
8   328-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th
9   Cir. 2007).  The Ninth Circuit has not addressed this issue
10  directly.

11       Here, there is no issue as to whether Defendants were acting
12  under color of state law; the question is whether Defendants
13  violated Plaintiff's civil rights under the First Amendment and
14  RLUIPA.  Because RLUIPA imposes a more heightened scrutiny of
15  restrictions on inmates' religious exercise, and contemplates a
16  broader definition of "religious exercise," if a prison policy
17  survives RLUIPA scrutiny, it survives First Amendment scrutiny.
18  *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008).

19                      **UNDISPUTED MATERIAL FACTS**

20       Local Rule (LR) 56.1, Local Rules for the Eastern District of
21  Washington, requires a party filing a motion for summary judgment to
22  file as a separate document the specific facts relied upon in
23  support of his or her motion, in serial fashion with reference to
24  the specific portion of the record where the fact is found.  LR
25  56.1(a).  A party opposing a motion for summary judgment must file
26  with its responsive memorandum a statement identifying the specific
27  facts disputed and describe the evidentiary reason for disputing the
28  identified fact.  LR 56.1(b).

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 8

Plaintiff has not complied with LR 56.1. However, liberally construing Plaintiff's pleadings, the court has reviewed the pleadings, including Plaintiff's Memorandum which contains a section identified as Statement of Facts (Ct. Rec. 86 at 3-6); Defendants' Memorandum, Counter-Statement of Material Facts, and supporting Declarations in opposition of Plaintiff's Motion for Summary Judgment (Ct. Rec. 97-104); Defendants' Memorandum and Statement of Material Facts on cross-Motion for Summary Judgment (Ct. Rec. 112, 113); Plaintiff's Response to Defendants' Memorandum of Authorities for cross-Motion for Summary Judgment (Ct. Rec. 119); and supplemental briefing (Ct. Rec. 154, 157). The following material facts are not disputed:[3]

1.    Plaintiff Sidney D. Jenkins, III, is a prisoner at the WSP sentenced to life without parole. (Ct. Rec. 86 at 4; Ct. Rec. 98 at 5; Ct. Rec. 113 ¶ 1.)

2.    Plaintiff professes to be a Shiite Muslim who believes that working or participating in educational programming at the prison would further the interests of a non-Islamic government in violation of his religious beliefs. (Ct. Rec. 98, § A. ¶ 1.)

3.    The Wash. State Const., art. II, § 29, and the Revised Code of Washington require inmates to work or participate in

---

[3] Specific facts, supported by affidavits made on personal knowledge or other evidence are required. Speculation, legal conclusions and conclusory allegations are not material facts for purposes of summary judgment analysis. *See Anderson*, 477 U.S. at 249-50.

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 9

1    educational programming.  (Ct. Rec. 113 ¶ 2; RCW 72.09.130(1).)

2        4.   DOC administrative regulations require inmates to work or

3    program.  Refusing a work or programming assignment is considered a

4    serious infraction.  Washington Administrative Code (WAC) § 137-25-

5    030 (557) (Rule 557); (Ct. Rec. 113, ¶ 3).

6        5.   DOC Policy 500.00.VII.A requires that "offenders will

7    maintain attendance and behavior as required by the facility and

8    education provider.  Failure to participate in programs may result

9    in disciplinary action."  (Ct. Rec. 113 ¶ 4; Ct. Rec. 64 at 24.)

10       6.   WSP Operation Memorandum 700.150 requires inmates meet

11   their programming requirements by working or going to school and

12   meet conduct expectations in each place.  (Ct. Rec. 113, ¶ 4; Ct.

13   Rec. 64, Ex. 1, Att. B at 29-30; Ex. 2.)

14       7.   DOC  work/program  requirements  were  created  by  the

15   government to prevent offender idleness; ensure public safety and

16   the safety of prison staff and inmates; provide offenders with

17   opportunities to assist in maintaining their living institution and

18   develop skills regardless of their release expectation; and allow

19   offenders to earn wages to pay for costs of incarceration.  (Ct.

20   Rec. 113, ¶ 12; Ct. Rec. 64, Ex. 1, Att. B; RCW 72.09.010, .111

21   (6)(7).)

22       8.   It is the government's intent to encourage responsible

23   behavior and accomplishments by linking the receipt or denial of the

24   offenders' privileges to positive efforts expended by the offenders

25   in work and educational programming.  (Ct. Rec. 113, ¶ 2; RCW

26   72.09.010(5)(d); RCW 72.09.130(1).)

27       9.   Education programs are available at WSP including basic

28   skills, vocational education, and if funding is available, college

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 10

level correspondence courses. (Ct. Rec. 113, ¶ 8; Ct. Rec 64, Ex. 2, *Decl. of Brent Caulk*.)

10. Rule 557 infractions carry prescribed, mandatory progressive sanctions. (Ct. Rec. 113, ¶ 13; Ct. Rec. 99, *Decl. of Ken Jurgensen*; Ct. Rec. 100, *Decl. of Marcia Sanchez*, Att. B).

11. Mandatory progressive sanctions are imposed for repeat Rule 557 violations under WAC 137-28-350(p)[4] and Prison Sanctioning Guidelines. (Ct. Rec. 113, ¶ 13; Ct. Rec. 100, Att. A, p. 13.)

12. Between January 2, 2008, and January 2009, Plaintiff received at least six Rule 557 infractions for his refusal to work or program. (Ct. Rec. 19; Ct. Rec. 113, ¶ 14; Ct. Rec. 86 at 25; Ct. Rec. 102.)

13. Plaintiff appeared at Rule 557 disciplinary hearings after refusing to work or program due to religious reasons. He was found guilty and received progressive sanctions, including temporary assignment to cell, loss of store privileges, loss of yard time, and loss of good conduct time. (Ct Rec. 64, Ex. 3, *Decl. of Gina Penrose*; Ct. Rec. 99, *Decl. of Ken Jurgensen*, ¶ 6; Ct. Rec. 101, *Decl. of Shari Hall,* Att. A-H.)

14. In December 2008, Plaintiff was placed on job assignment lists after his Rule 557 violations were adjudicated. (Ct. Rec. 113, ¶ 12; Ct. Rec. 64, Ex. 3, ¶ 4.)

---

[4] The cited DOC regulation states, "The sanction for infraction #557 and #810 shall be the loss of available earned release credits and other privileges as outlined in department policy. Progressively more severe sanctions will be utilized for subsequent infractions #557 and #810." WAC 137-28-350(p).

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 11

1    15. Plaintiff was offered educational programming as an

2 alternative and refused based on religious grounds. (Ct. Rec. 64,

3 Ex. 3, ¶ 4; Ct. Rec. 86, Ex. 3 at 2-3.)

4    16. Between January 2006 and July 2008, more than 400 Rule 557

5 violations were adjudicated; of those, 162 inmates were infracted

6 more than once for Rule 557 violations. (Ct. Rec. 113, ¶ 14; Ct.

7 Rec. 102 at 3.)

8                            **DISCUSSION**

9 **A.   RLUIPA CLAIMS**

10    In 2000, Congress passed RLUIPA which provided heightened

11 protection of prison inmates' religious beliefs to prevent undue

12 barriers to religious observances by persons institutionalized in

13 state or federal institutions. In passing RLUIPA, Congress

14 conditioned a state's acceptance of federal funding for programs

15 involving institutionalized persons on the acceptance of the

16 heightened protection. 42 U.S.C. § 2000cc-1. Under RLUIPA, no

17 government "shall impose a substantial burden on the religious

18 exercise of a person residing or confined to [a jail, prison or

19 other correctional facility] . . . even if the burden results from

20 a rule of general applicability," unless the burden furthers a

21 "compelling governmental interest." 42 U.S.C. §§ 1997, 2000cc-1(a).

22 Once a plaintiff has established a substantial burden on his or her

23 religious exercise, the defendants must show the burden serves that

24 compelling interest by "the least restrictive means." *Id.*

25 "Religious exercise" is broadly defined under RLUIPA as "any

26 exercise of religion, whether compelled by, or central to, a system

27 of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

28    Because RLUIPA affords heightened protection and imposes

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 12

stricter scrutiny of government regulations affecting religious exercise, the court will consider Plaintiff's RLUIPA claim first. In doing so, the court must identify the "religious exercise" allegedly burdened, then determine if the challenged prison regulation "substantially burdens" Plaintiff's religious exercise. *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008). For purposes of RLUIPA claims, "religious exercise" is more than a general practice of the professed religion; it encompasses the adherent's particular practices and performance of physical acts. *Greene*, 513 F.3d at 987-88 (group worship, preaching to other inmates, keeping kosher are all facets of religious exercise).

**1.    Substantial Burden on Religious Exercise**

A burden on religious exercise is substantial "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs." *Thomas v. Review Bd. of the Indiana Employment Sec. Division*, 450 U.S. 707, 717-18 (1981); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). Even if the pressure is indirect, the burden on free exercise is substantial. *Id.*

It is undisputed that Plaintiff professes to be a Shiite Muslim. Plaintiff has been infracted and subjected to various punishments for adhering to his professed belief that working for a non-Islamic government is against the teachings of Islam. He claims the prison regulations, policies and disciplinary procedures governing the work/program requirements put direct pressure on him to abandon his religious beliefs or lose privileges. Defendants challenge Plaintiff's interpretation of Islam texts submitted as

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 13

support of his claimed beliefs, stating Plaintiff has failed to supply verification from a Muslim cleric that working at the state-run prison "results in a substantial burden to his religious practice." (See Ct. Rec. 113, ¶ 7.) However, Plaintiff need not show his belief that working for a non-Islamic government is one "central" to the Muslim faith. 42 U.S.C. § 2000cc-(5)(7)(A); *see also Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (in RLUIPA actions clergy verification insufficient to override inmate's "sincerely held" religious beliefs). A belief "sincerely held" and "rooted in religious belief" is entitled to constitutional protection without regard to whether the belief is a central tenet to a recognized faith. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Further, RLUIPA neither differentiates among bona fide faiths, nor does it single out a bona fide faith for "disadvantageous" or special treatment. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).   As found by the Supreme Court, "it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (emphasis added).

Without speculating on the validity of Plaintiff's assertion that working or programming for a non-Islamic government is against the teachings of his Muslim religion, and without questioning the sincerity of Plaintiff's claimed belief, it is assumed being infracted and losing privileges for refusing to comply with DOC's requirements that he work or participate in educational programming constitutes a substantial burden on Plaintiff's professed religious belief. *Thomas, 450 U.S. at 717-18; Warsoldier,* 418 F.3rd at 996;

1   *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997).    However,

2   Defendants have established a compelling government interest that is

3   furthered by the challenged regulations in the least restrictive

4   means available.

5       **2.    Compelling State Interest**

6       Prison security and the effective administration of its prisons

7   are compelling state interests. *Cutter*, 544 U.S. at 726; *Preiser v.*

8   *Rodriguez*, 411 U.S. 475, 491 (1973). "Where a state penal system is

9   involved, federal courts have . . . additional reason to accord

10  deference to the appropriate prison authorities." *Turner v. Safley*,

11  482 U.S. 78, 85 (1987).    Although RLUIPA provides heightened

12  protection of religious exercise for persons confined in state

13  institutions, Congress was mindful of "the urgency of discipline,

14  order, safety, and security in penal institutions." *Cutter*, 544

15  U.S. at 717, 723.    In the prison context, RLUIPA must be

16  administered in a balanced way, recognizing the prison's need to

17  maintain security, discipline and order, "consistent with

18  consideration of costs and limited resources." *Id.* (Citations

19  omitted.) "[S]hould inmate requests for religious accommodations

20  become    excessive,    impose    unjustified    burdens    on    other

21  institutionalized person, or jeopardize the effective functioning of

22  an institution, the facility would be free to resist the

23  imposition." *Id.* at 711.    Thus, federal law does not allow

24  accommodation of religious beliefs to compromise a corrections

25  facility's need to maintain security, order and safety. *Id.*

26      Assuming Plaintiff has established a substantial burden on his

27  religious exercise, as found by the district court and affirmed by

28  the Ninth Circuit, "Congress did not intend that RLUIPA would

undermine prison operations." (Ct. Rec. 117; Ct. Rec. 140.) It is undisputed that Washington State law, DOC regulations and prison policies require inmates to participate in work or approved education programs, and those who refuse to participate lose privileges according to the statutory system and administrative regulations. RCW 72.09.130, .460. The Washington State Legislature clearly articulates its intent and purpose in establishing these requirements: to avoid idleness among the inmates; to ensure the safety of the public, staff and inmates; to promote the adoption by inmates of the work ethic to reflect the community expectation that "all individuals should work and through their efforts benefit both themselves and the community"; to provide opportunities for self-improvement; to link receipt or denial of privileges to responsible behavior and accomplishments; to share the personal and fiscal obligations in the corrections system; and to provide for prudent management of resources by the administration of productive programs. RCW 72.09.010 (1),(5),(6) .130, .460(1).

In addition, the inmate work program is designed "to reduce the tax burden of the corrections system and save taxpayer money through production of goods and services for sale and use," as well as provide training and work experience for inmates' legitimate employment after their release from custody. RCW 72.09.070(2)(a) and (b). Plaintiff provides neither facts nor legal authority to dispute the compelling interest the State has in maintaining order, security and inmate safety in its prisons. The work requirement is a function of the inmates' incarceration and the prison's need to control the inmate population for security purposes. *Hale v. State of Arizona*, 993 F.2d 1387, 1395 (9th Cir. 1993). Defendants have met

1  their burden to show the government's compelling interest in

2  requiring inmates to program or work as part of their sentence and

3  incarceration.

4      **3.    Least Restrictive Means**

5      In fashioning the least restrictive means to serve the prison's

6  interest in security, order and safety, the state can favor "neither

7  one religion over others nor religious adherents collectively over

8  nonadherents." *Board of Education of Kiryas Joel Village School*

9  *Dist. v. Grumet*, 512 U.S. 687, 696 (1994).  The First Amendment of

10 the Constitution does not allow the accommodation of any one

11 religious belief to the exclusion of other beliefs.   To do so would

12 be a direct violation of the Establishment Clause, which requires

13 government neutrality toward religion.  U.S. Const. Amend. I.   In

14 the prison context, "courts must take adequate account of the

15 burdens a requested [religious exercise] accommodation may impose on

16 nonbeneficiaries . . .; and they must be satisfied that the Act's

17 prescriptions are and will be administered neutrally among different

18 faiths." *Cutter,* 544 U.S. at 720 (citations omitted).  Just as

19 RLUIPA does not differentiate between religions, it does not single

20 out a religion for special treatment.  Thus, the least restrictive

21 means to accommodate Plaintiff's religious beliefs must conform to

22 the neutrality requirements of the Establishment Clause, while

23 furthering the state's compelling interest.

24     As found by the district court in its Order denying Plaintiff's

25 motion for preliminary injunction, Plaintiff is seeking an absolute

26 exemption from work based on religion, as opposed to an

27

28

accommodation to meet a specific religious practice.[5] (Ct. Rec. 117, 140.)  Applying the neutrality required by the Establishment Clause, if Defendants allow Plaintiff to be exempt from work/programming requirements and progressive discipline for refusal to work, they would be required to exempt all offenders who profess their religion does not allow them to work or program.  *Cutter*, 544 U.S. at 723-24 (a particular religious sect cannot be singled out for special

---

[5] Although Plaintiff alleges Defendants have not explored a less restrictive means to accommodate his professed religious belief, such as permanently restricting him to his cell during program hours, this allegation is not supported by the evidence, which shows that (1) Plaintiff was aware of the WSP work or program requirement and possible sanctions for failure to comply with prison regulations; (2) the educational programming alternative was offered and refused; and (3) Plaintiff presented the alternative of permanent assignment to cell to the prison review team, which the officials considered and rejected as contrary to RCW 72.09.130(1), WAC 137-28-350(p), and prison sanctioning guidelines which require progressive sanctions for Rule 577 violations. (Ct. Rec. 64, Ex. 3; Ct. Rec. 99, ¶¶ 6, 7; Ct. Rec. 100; Ct. Rec. 101, Att. F; Ct. Rec. 103, ¶ 10.)  Further, as discussed *infra*, prison officials have a legitimate concern that exempting a Muslim inmate from all work or programming requirement would require the exemption be available to any inmate claiming a religious basis for the exemption, a result that would undermine the operation of prison industries and maintenance of the facility, as well as threaten the security and order of the prison. (Ct. Rec. 99, 103.)

1    treatment by the state); *see also Kiryas Joel,* 512 U.S. at 703

2    (state law creating special school district to serve Satmar Hasidim

3    community violated Establishment Clause).

4        Undisputed evidence shows there were over 400 Rule 557

5    infractions issued between 2006 and 2008.  (Ct. Rec. 100.)  As

6    stated by Defendants in sworn affidavits, Plaintiff's suggested

7    "permanent assignment to cell" alternative sanction for refusing to

8    work for religious reasons could result in an unmanageable number of

9    infracted inmates confined to cell daily, causing increased need for

10   cell block supervision and decreased productivity in prison

11   enterprises.   It also could jeopardize institutional operations

12   dependent upon prisoner labor, defeat the goals of rehabilitation,

13   education, and job training as set forth in state laws, and most

14   importantly, threaten security and discipline by allowing prisoners

15   to have unstructured, non-productive time. (Ct. Rec. 99, 103.)  Such

16   a result is clearly unreasonable and untenable in the prison context

17   and is not a result contemplated by RLUIPA.   *Cutter*, 544 U.S. at

18   722-23 ("[w]e do not read RLUIPA to elevate accommodation of

19   religious observances over an institution's need to maintain order

20   and safety").

21       As found by the court in its Order denying Plaintiff's Motion

22   for Preliminary Injunction, "the least restrictive means of

23   furthering the governments compelling interest is to require the

24   Plaintiff to engage in work or educational programming and if he

25   does not do so, sanction him appropriately and as authorized." (Ct.

26   Rec. 117 at 7, affirmed by the Court of Appeals, Ct. Rec. 140.)  The

27   undisputed material facts establish that the prison's work/program

28   regulations are neither frivolous nor arbitrary.  Defendants have

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 19

1  met their burden to show the state is implementing the least
2  restrictive means to serve its compelling interest in prison
3  security, safety and order.  Therefore, summary judgment for the
4  Defendants is warranted on all RLUIPA claims.

5  **B.    FIRST AMENDMENT CLAIMS**

6         Under First Amendment Free Exercise clause analysis, where a
7  prison policy "puts substantial pressure on an adherent to modify
8  his behavior and violate his beliefs," that policy infringes on the
9  free exercise of religion. *Thomas,* 450 U.S. at 718; *May v. Baldwin*,
10 109 F.3d 557, 563 (9th Cir. 1997).   To survive constitutional
11 scrutiny under the First Amendment Free Exercise standard,
12 government officials must show prison policies restricting religious
13 exercise are rationally related to valid corrections goals, are
14 content neutral, logically advance the goals of security and safety,
15 and are not "an exaggerated response" to those goals. *Turner*, 482
16 U.S. at 89, 93.  Also, prison officials must determine if there is
17 an alternative means of exercising this right and consider the
18 impact the alternative means will have on prison security, staff and
19 inmate safety and the allocation of prison resources.  The absence
20 of a ready alternative to the regulation is evidence of the
21 reasonableness of the prison regulation. *Turner*, 482 U.S. at 89-90;
22 *Mayweathers v. Newland*, 258 F.3d 930, 937-38 (9th Cir. 2001).

23        As discussed above, the work/programming requirements meet the
24 higher standard of RLUIPA, and further the "compelling" government
25 interests of prison security and order.  The work/programming
26 requirements are rationally related to maintenance of prison order
27 and security, and there is no less restrictive means to meet those
28 goals.  Because there is no ready alternative available, under the

*Turner* analysis, the prison's work and educational programming requirements do not violate Plaintiff's rights under the First Amendment.[6]  *Turner*, 482 U.S. at 89-90.  Defendants prevail as a matter of law on all First Amendment claims.

Plaintiff does not raise genuine issues of material fact in his pleadings.  Considering the evidence from both parties, permissible inferences drawn from the evidence, and the undisputed material facts, the court concludes there is no evidence on which a jury could reasonably find for Plaintiff; therefore, summary judgment for Defendants is appropriate on all claims. Accordingly,

**IT IS RECOMMENDED:**

1.   Defendants' Motion for Summary Judgment **(Ct. Rec. 111)** be **GRANTED**;

2.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 85)** be **DENIED**; and

3.   Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written

─────────────────

[6] Because the undisputed facts establish that Defendants have not violated Plaintiff's civil rights under RLUIPA or the First Amendment, the issues of damages, qualified immunity, Eleventh Amendment immunity, and liability of specific defendants are moot and will not be addressed.  *See, e.g., Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002); *Schneider v. County of San Diego*, 28 F.3d 89, (9th Cir. 1994).

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 21

objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72(b)(3); LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Plaintiff, Defendants and the Chief Judge Suko.

DATED August 4, 2010.


        S/ CYNTHIA IMBROGNO
    UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 22